**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **Monica Johnson, Me'Kia Mouling, G.K.** | § | |
| **by next friend Monica Johnson, Clifford** | § | |
| **Jones, Brandolyn Jones, Praiyer Jones,** | § | |
| **and A.J., by next friends Clifford and** | § | |
| **Brandolyn Jones** | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL NO. 6:24-cv-00108-ADA-JCM** |
| **v.** | § | |
| | § | |
| **Darryl Henson, Marlin Independent** | § | |
| **School District, and John Simmons** | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

**TO:   THE HONORABLE ALAN D ALBRIGHT,
         UNITED STATES DISTRICT JUDGE**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(f) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 12) under Rule 12(b)(6). For the following reasons, the undersigned **RECOMMENDS** that the Motion be **GRANTED** in part and **DENIED** in part.

## I.     BACKGROUND

In 2020, Darryl Henson was hired to be the superintendent of schools for Marlin ISD. Pl.'s 1st Am. Compl. at 4 (ECF No. 11). On May 22, 2023, Henson cancelled the senior class graduation for the class of 2023 because only a handful of students were eligible to graduate. *Id*. at 8.

Praiyer Jones was the senior class president in the 2022-2023 school year. *Id*. at 9. On January 6, 2023, his transcript was received and verified by the Marlin High School counselor. *Id*.  On May 9, 2023, Praiyer's transcript was received by the Public Education Information Management System and reviewed by Dr. Stacy Parker-Knight who is the Chief Operating Officer of Marlin ISD. *Id*. According to his transcript review, Praiyer and his parents were told he was on track to graduate. *Id*. On May 23, 2023, Praiyer spoke to KWTX regarding the cancelation of graduation. *Id*. In June, Praiyer received his updated transcript which showed his grades for English IV and College Prep Math had been changed from all As to all Cs, lowering his GPA and class rank. *Id*. These changes were made without an official grade change form required to change a grade at Marlin ISD. *Id*. at 10.

Clifford Jones met with Henson to discuss Praiyer's grades. *Id*.  Brandolyn Jones received a link to file a complaint form with the Texas Education Agency's complaint portal. *Id*. The form was supposed to be confidential. *Id*. However, on June 3, 2023, Clifford received a call from the former Mayor of the City of Marlin relaying a message that Henson would be suing Brandolyn, her husband, and her son for filing the complaint form. *Id*. During a school board meeting, Brandolyn spoke during the public comment to ask for Title I funds to be used to hire a graduation auditor to prevent future graduation cancellations. *Id*. The Marlin ISD Board of Managers began recording their meeting after she spoke. *Id*.

2

Clifford and Brandolyn filed a grievance with Marlin ISD, and it was investigated by Henson who was the subject of the grievance. *Id*. at 11. On July 18, 2023, Henson held a Level 2 grievance meeting and denied their relief requested. *Id*. Five days after the meeting with Henson, Clifford and Brandolyn received their younger son A.J.'s final report card where one of his grades had been changed from a B to an F and the name of his science teacher was changed to the name of a teacher who had died several months earlier. *Id*. A.J. had been allowed to compete in athletics indicating that he had not earned a failing grade, and that the grade was changed retroactively. *Id*. A.J. is protected under a Section 504 Plan for disabilities which means he should have been entitled to procedural protections including a 504 meeting for his parents if he was failing a class. *Id*. With the grade change, he has lost a science credit which takes him off track from graduating with a Distinguished High School Diploma and will affect his ability to receive scholarships. *Id*. He is also no longer on track to graduate with his current class. *Id*.

After Henson's decision to cancel graduation, Monica Johnson started a petition calling for his resignation because of failures in leadership which resulted in Marlin ISD losing qualified teaching staff. *Id*. at 9. On April 26, 2023, Monica and her daughter Me'Kia Mouling met with the Marlin High School counselor where they were assured that Me'Kia had done everything necessary to graduate and was ranked #1 in her class. *Id*. at 12. Me'Kia had sent her transcript to Texas A&M. *Id*. On May 22, 2023, Monica was informed that Henson and another Marlin ISD staff member had changed the applicable guidelines which might affect Me'Kia's class rank. *Id*. She was eventually moved to #3 resulting in a loss of scholarship opportunities. *Id*. During a parent meeting with Monica, Henson said multiple times that "#3 is a good place to be." *Id*. When Monica tried to ask questions during the meeting, Henson had Marlin ISD Police Chief,

John Simmons, remove Monica from the meeting. *Id*. at 13. The next day, Monica was served with a criminal trespass warning and banned from ISD campuses for a year. *Id*.

Monica filed a grievance which was investigated by Henson, who was the subject of the grievance. *Id*. After the Level 2 Grievance meeting, Henson told Monica with respect to Me'Kia's class rank that "it might be a tie" or "it might not be." *Id*. Me'Kia was moved back to #1 in her class. *Id*. However, she was not allowed to give a valedictorian speech at the delayed graduation ceremony. *Id*. Monica appealed Henson's Level 2 grievance decision to the Marlin ISD Board of Managers. *Id*. The Board refused to allow her to present evidence, but they allowed Henson to present evidence. *Id*. at 14. Monica's son G.K. is a current Marlin ISD student. *Id*. Monica has filed additional grievances related to the improper handling of G.K.'s grades. *Id*. G.K. has missed school due to Henson's insistence that Monica attend a "bulldog camp" before her son could attend public school. *Id*.

When Brandolyn and Monica requested information through a public information request, they were advised that it would cost over $8,000 to get copies of the documents requested. *Id*. The documents they were requesting were basic documents including education records. *Id*. It is alleged that Henson communicates with some students via text message and has encouraged them to call him "daddy." *Id*. at 15. Henson made derogatory references to Brandolyn's character and physical appearance calling her a liar and that she was "as wide as all outside," he was "surprised there is a belt big enough," and "come on y'all, you know that lady is big." *Id*. at 16.

## II.      LEGAL STANDARDS

Upon motion or sua sponte, a court may dismiss an action that fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006). To survive Rule 8, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court begins by identifying which allegations are well-pleaded facts and which are legal conclusions or elemental recitations, accepting as true the former and rejecting the latter. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court need not blindly accept every allegation of fact; properly pleaded allegations of fact amount to more than just conclusory allegations or legal conclusions "masquerading as factual conclusions." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). The court then determines whether the accepted allegations state a plausible claim to relief. *Id.* at 379.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the Complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For purposes of Rule 12(b)(6), "pleadings" include the complaint, its attachments, and documents

referred to in the complaint and central to a plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

### III.   DISCUSSION

#### A.  Plaintiffs' state-law tort claims should be dismissed.

The defendants argue that "[p]laintiffs' defamation, fraud, and intentional infliction of emotional distress claims must be dismissed because they are intentional tort claims, which are barred because they are not included in the TTCA's waiver of immunity." Def. Mot. at 9. The Texas Tort Claims Act ("TTCA") states "[t]his chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities." Tex. Civ. Prac. & Rem. Code § 101.057(2). The Fifth Circuit has said, "the TTCA does not apply to claims arising out of an intentional tort." *Goodman v. Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009). Therefore, the plaintiffs' claims for defamation, fraud, and intentional infliction of emotional distress are barred by immunity. Accordingly, the undersigned **RECOMMENDS** that plaintiffs' state law tort claims be **DISMISSED**.

#### B.  Plaintiffs state-law ultra vires claims should be dismissed.

An ultra vires action is one in which the plaintiff seeks "relief in an official-capacity suit against a government actor who allegedly has violated statutory or constitutional provisions by acting without legal authority or by failing to perform a purely ministerial act." *Lazarides v. Farris,* 367 S.W.3d 788, 801 (Tex. App. 2012). The plaintiffs bring ultra vires claims against defendants Henson and Simmons alleging the defendants acted without statutory authority in wrongfully issuing the criminal trespass against Monica Johnson after she spoke out at a school board meeting. Pl.'s 1st Am. Compl. at 23–24. The defendants assert that "the ultra vires claim

would . . . be barred by immunity because Plaintiffs have not pleaded a cognizable ultra vires claim seeking only prospective injunctive relief." Def. Mot. at 13. The Texas Civil Practice and Remedies Code says, "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106. The statute strongly favors dismissal of governmental employees. *Waxahachie Indep. Sch. Dist. v. Johnson,* 181 S.W.3d 781, 785 (Tex. App. 2005). Accordingly, the undersigned **RECOMMENDS** that plaintiffs' state law ultra vires claims be **DISMISSED**.

### C.  Plaintiffs have adequately pleaded their claim under Section 1983.

Title 42 U.S.C. § 1983 creates a cause of action against any person who, under color of law, causes another to be deprived of a federally protected constitutional right. 42 U.S.C. § 1983. Two allegations are required to state a claim under § 1983. "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988). The defendants claim that "[p]laintiffs' Section 1983 claim should be dismissed because Plaintiffs have failed to allege facts that would establish interference with their constitutional rights." Def. Mot. at 18.

To prevail on a First Amendment violation, the plaintiff must show not only that the official acted with a retaliatory motive and that the plaintiff was injured, but also that the motive was a "but-for" cause of the injury. *Hartman v. Moore*, 547 U.S. 250, 126 (2006). The plaintiffs pleaded facts to demonstrate their First Amendment right to free speech was violated including allowing Henson to present evidence at the appeal to the school board while denying Monica the same right and removing Monica from a school board meeting. Pl.'s 1st Am. Compl. at 36. The

retaliatory actions taken against the plaintiffs after the cancellation of graduation limited their ability to exercise their fundamental rights therefore interfering with their constitutional rights. The interference with the plaintiffs' constitutional rights creates a cause of action under Section 1983.

**D.  The Plaintiffs have adequately pleaded a Section 1985 conspiracy claim.**

To state a claim under 42 U.S.C. § 1985(3), the plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, either directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Hilliard v. Ferguson,* 30 F.3d 649, 652–53 (5th Cir. 1994). A governmental entity cannot conspire with itself through its agents or employees when the acts of the agents or employees are within the scope of their employment. *See Larson v. Miller,* 76 F.3d 1446, 1456 n. 6 (8th Cir. 1996). The defendants argue that because Henson and Simmons were employees of Marlin ISD, together they constitute a single governmental entity thus preventing a conspiracy claim. Def. Mot. at 19.

The Fifth Circuit has noted that "[t]he heart of the cause of action accorded by § 1985 is a conspiracy to interfere with a person's civil rights. The essence of a conspiracy is an understanding or agreement between the conspirators." *Holdiness v. Stroud,* 808 F.2d 417, 424–25 (5th Cir. 1987). Henson and Simmons serve two separate roles within Marlin ISD. Henson is the superintendent of schools and Simmons is the Marlin ISD Police Chief.  Pl.'s 1st Am. Compl. at 4; *Id*. at 5. However, the plaintiffs plead facts to show that Henson and Simmons conspired to deprive equal protection under the law by wrongfully issuing a trespass claim against Monica Johnson, removing her from the school board meeting, independently

investigating a Level II grievance, and acting to retaliate against the plaintiffs after the cancellation of graduation. Thus, the plaintiffs have stated a Section 1985 conspiracy claim.

### E. The Plaintiffs have adequately pleaded a claim under Section 504 of the Rehabilitation Act.

The defendants assert that, "A.J.'s claim under Section 504 of the Rehabilitation Act of 1973 . . . must be dismissed because Plaintiff does not assert facts that the issues with his grades constitute discrimination based on his disabilities." Def Mot. at 19. However, the defendant misunderstands the plaintiffs' argument. In the plaintiff's first amended complaint, they plead facts to show that A.J., under Section 504, should have been entitled to academic support and services related to a failing grade prior to him receiving no credit for the class. Pl.'s 1st Am. Compl. at 11. None of this academic support was provided to him to work to correct his failing grade. *Id*. The plaintiffs also claim that to avoid having an unlicensed teacher assigning the grade to A.J., Henson switched A.J.'s teacher of record to a teacher A.J. had never encountered and who had been deceased for some time before the grade was given. *Id*. Further, A.J. was allowed to compete in athletics. *Id*. at 12. According to Marlin ISD policy if A.J. was failing a class, he should not have been allowed to compete in athletics. *Id*. A.J. was denied the support provided under Section 504 because of the defendants' actions and therefore has a claim under Section 504.

### F. The Plaintiffs have adequately pleaded a claim for punitive damages.

The defendants assert that "[p]laintiffs' punitive damages claim must also be dismissed because federal law is "unequivocally clear" that school districts are immune from punitive damages under section 1983." Def. Mot. at 21. At the motion to dismiss stage of litigation, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina*, 495 F.3d at 205. Individual defendants may be liable for

punitive damages for intentional violations of federal law under Section 1983. *Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017). The plaintiffs have pleaded facts that the defendants violated plaintiffs' rights by retaliating against their right to free speech and denying them their right to due process by failing to follow the proper procedures for the grievance process. At the motion to dismiss stage, the plaintiffs have pleaded enough facts to support a claim for punitive damages against both the individual defendants and the school district.

## I.      CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 12) be **GRANTED** in part and **DENIED** in part.

## II.      OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1415.

**SIGNED this 1st day of July 2024.**

**JEFFREY C. MANSKE**
**UNITED STATES MAGISTRATE JUDGE**